UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WELLINGTON FELIZ and SULEIKA FELIZ,

                             Plaintiffs,

             - against -

THE CITY OF NEW YORK, BRONX-LEBANON
HOSPITAL CENTER,
                         Defendants.
-------------------------------------------------------------------X

SECOND AMENDED
COMPLAINT

1:16-cv-05261
PLAINTIFFS DEMAND
TRIAL BY JURY

## COMPLAINT

Plaintiffs, WELLINGTON FELIZ and SULEIKA FELIZ, through undersigned counsel, sue Defendants, THE CITY OF NEW YORK and BRONX-LEBANON HOSPITAL CENTER, and allege the following upon information and belief:

### NATURE OF THE ACTION

1. WELLINGTON FELIZ and SULEIKA FELIZ ("Mr. Feliz" and "Ms. Feliz" or "Plaintiffs") are both deaf and communicate through American Sign Language. This action is on behalf of Mr. Feliz and Ms. Feliz for declaratory and injunctive relief and monetary damages to redress the injuries they suffered as a result of being discriminated against by Defendants on the basis of disability, record of disability and/or perceived disability under the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act, New York State Executive Law § 296 and the New York City Administrative Code §8-107, to remedy injuries. Plaintiffs suffered as a result of being discriminated against, and were deprived of public services and public accommodations due to their disability.

2. This claim also asserts false arrest of Mr. Feliz pursuant to the Fourth Amendment of the United States Constitution and violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

3. This claim further asserts state law actions for false arrest, assault, and battery of Mr. Feliz. Mr. Feliz was forcibly detained, hospitalized and detained by the named defendants and was deprived of an American Sign Language interpreter and/or auxiliary communication aids during his wrongful detention. Without the benefit of a qualified interpreter or an auxiliary communication device, Mr. Feliz had little to no knowledge as to why he was taken into custody, how long he would remain in custody, or what his rights were. While in police custody, Mr. Feliz was forcibly hospitalized in a psychiatric unit, and was not provided with a qualified interpreter or auxiliary communication device. Mr. Feliz was never charged with a crime and he sustained physical and emotional trauma as a result of the foregoing events. Ms. Feliz, as will be addressed presently, was questioned by New York City Police officers regarding, upon information and belief, her husband's mental health condition, but she was not able to effectively communicate with the police officers due to the absence of American Sign Language interpreters.

4. Ms. Feliz was present when the police first arrived at the subject premises. If Ms. Feliz had been questioned by the police officers in the presence of American Sign Language interpreters, she would have explained that she did not believe that her husband required hospitalization and the police officers would not have taken Mr. Feliz into custody and to Bronx-Lebanon Hospital for evaluation. Furthermore, the police officers communicated with Ms. Feliz's daughter who was eleven years old at the time of the incident, as Ms. Feliz's daughter is hearing. The absence of interpreters and the interrogation of Ms. Feliz's daughter caused and continues to cause Ms. Feliz great mental and emotional anguish. The Complaint states causes of action under federal, state,

2

and city law for deprivations of civil rights on behalf of the Plaintiffs as well as state common law causes of action for tort on behalf of Mr. Feliz.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under federal law, including the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq*. and Section 504 of the Rehabilitation Act pursuant to 29 U.S.C. §794 *et seq*. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 for violations of Title II of the ADA to redress the deprivation of rights, privileges, and immunities of which Plaintiffs have been deprived.

6. Plaintiffs invoke the pendant jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. § 1367(a) for state law claims, including assault, battery, false imprisonment, negligent hiring and violations of the New York State and New York City Human Rights Law.

7. The Plaintiff, Mr. Feliz, brings this action under 42 U.S.C. Sections 1983 and related state laws seeking compensatory damages, injunctive relief, and attorney's fees for the Defendant City of New York's violation of his rights afforded by the United States and New York Constitution and under the laws of The State of New York and the City of New York. Plaintiff MR. FELIZ seeks compensatory damages, attorney's fees, and punitive damages against Defendant Bronx Lebanon Hospital Center's violation of his rights afforded by United States and New York Constitution and under the laws of The State of New York and the City of New York, as well as under the ADA, the Rehabilitation Act and the New York State and New York City Human Rights Laws.

8.  The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the events having operative significance in this case which give rise to the claims herein occurred within this District.

9.  This Court has *in personam* jurisdiction over Defendants because they are located in, conduct operations within, transact business in and provide services within the City of New York.

## CONDITION PRECEDENT

10. Plaintiff Mr. Feliz has performed all conditions precedent to the filing of this action, including the timely filing of a Notice of Claim against the City of New York and the New York City Police Department, stamped received on October 2, 2015, setting forth the time, place, and manner in which the incident occurred.

11. Hearings pursuant to General Municipal Law were repeatedly scheduled on December 23, 2015, February 9, 2016, and April 19, 2016 but were adjourned once by Plaintiff MR. FELIZ and the other times by Defendant. On the last scheduled date when Plaintiff had informed Defendant he would be present with a sign language interpreter to communicate with counsel, Defendant declined to proceed with the hearing with Plaintiff utilizing his interpreter and such hearing has been waived.

12. This complaint was timely filed within one year and ninety days of the events described herein as they relate to Plaintiff MR. FELIZ and within three years of the events described herein for violations under the ADA, Rehabilitation Act, and New York State and New York City Human Rights Laws brought in behalf of Plaintiffs and with respect to which no conditions precedent are required to be met under law in order to bring these causes of action.

4

## PARTIES

13. Plaintiffs are residents of the State of New York and reside at 115B West 168th Street, Apartment 1E, Bronx, New York 10452.

14. At all times material herein, defendant THE CITY OF NEW YORK ("CITY OF NEW YORK"), was and still is a duly incorporated municipality of the State of New York, County of New York, whose seat of governance was and still is located at 250 Broadway, New York, New York 10007.

15. At all times material herein, BRONX-LEBANON HOSPITAL CENTER ("BRONX-LEBANON HOSPITAL") was a domestic not for profit corporation organized an existing under the laws of the State of New York.

16. At all times material herein BRONX-LEBANON HOSPITAL owned, operated, maintained, controlled, and managed a hospital known as BRONX-LEBANON HOSPITAL pursuant to the laws of the State of New York for the care of the sick, located at addresses which include, but are not limited to 1650 Grand Concourse, Bronx, New York 10457 at locations including but not limited to emergency rooms, patient examination rooms, diagnostic facilities, psychiatric facilities, and the appurtenances thereto and which provided personnel, including doctors, nurses, attendants, technicians, and other health care providers for the care and treatment of its patients, and which held itself out to the public as furnishing care and treatment facilities where patients, including Plaintiff, Mr. Feliz, could receive emergency and psychiatric care and treatment.

## MATERIAL FACTS

17. At all times material herein, Plaintiffs were deaf and their primary language was and remains American Sign Language.

5

18. At all times material herein, Plaintiff Mr. Feliz was registered as legally blind with the Commission for the Blind and Visually Handicapped in accordance with New York State Law, Section 8704. However, Mr. Feliz's limitation is to his peripheral vision and he is visually capable of seeing American Sign Language directed at him.

19. On or about July 7, 2015, Plaintiff Mr. Feliz was inside his lawful residence at 115B West 168th Street, Apartment 1E, Bronx, New York 10452.

20. Inside his residence, Plaintiff was engaged in lawful activity for which no probable cause existed for being brought into custody or detained.

21. On July 7, 2015, two police officers employed by NYPD arrived at Plaintiff's residence and summoned Plaintiff to the door.

22. Neither police officer had an American Sign Language interpreter or an auxiliary aid with which to effectively communicate with Plaintiff.

23. The police officers arrived at Plaintiff MR. FELIZ's apartment after having attempted to communicate with Plaintiff SULEIKA FELIZ who was in a friend Patricia's apartment, along with Plaintiff SULEIKA FELIZ's daughter Z.F.

24. The police officers had received a telephone call from Plaintiff Ms. Feliz's sister Miosotis Perez Rodriguez, who informed police officers, upon information and belief, that Plaintiff Ms. Feliz and Plaintiff Mr. Feliz had been having an argument. Upon information and belief, Plaintiff Ms. Feliz 's sister Miosotis Perez Rodriguez told the police, by telephone, that Plaintiff Mr. Feliz might be in danger of harming himself.

25. Upon receiving the phone call from Plaintiff Ms. Feliz's sister Miosotis Perez Rodriguez, police officers responded and attempted to communicate with Plaintiff Ms. Feliz at her friend's Patricia's apartment. The police officers did not bring an interpreter with them, nor an auxiliary

aid such as a Video Remote Interpreting ("VRI") device, which could be activated through a device such as an IPAD, pursuant to which an interpreter on screen could have facilitated an effectively communicated conversation between the police and the Plaintiff, Ms. Feliz. The police did not respond to Plaintiff Ms. Feliz with an on-site interpreter or VRI, even though the police officers knew, or should have known, that Plaintiff Ms. Feliz, and her husband, Plaintiff Mr. Feliz, were deaf.

26. Approximately six police officers arrived at the apartment of the friend of Plaintiff Ms. Feliz where Ms. Feliz was present. As stated, the police officers were unable to effectively communicate with the Plaintiff, and instead engaged in communication with the Plaintiff's daughter, a minor, causing great emotional distress to the Plaintiff.

27. Upon information and belief, if the police officers had responded with an on-site interpreter or a VRI, or other auxiliary aid, Plaintiff Ms. Feliz would have communicated to the officers that she did not believe that her husband required hospitalization and the police officers would not have taken Plaintiff Mr. Feliz into custody and to Bronx-Lebanon Hospital.

28. After having attempted to communicate with the Plaintiff Ms. Feliz, two police officers arrived at Plaintiff Mr. Feliz's apartment, as mentioned, but without an interpreter or VRI or other auxiliary aid to effectively communicate with the Plaintiff, MR. FELIZ. Instead, the police officers attempted to use written notes to communicate with Plaintiff and to the best of Plaintiff Mr. Feliz's knowledge, asked if he was okay.

29. Written notes are an ineffective means of communication with Plaintiff whose primary language is American Sign Language, who has limited English proficiency, and who has tunnel vision.

7

30.  Plaintiff attempted to answer the question he believed was asked by the police officers by responding in hand gestures to inquire why the police officers were there and nodding to indicate that he was indeed all right.

31.  Upon Plaintiff's attempts to use sign language, the officers physically put his hands down to stop him from communicating in American Sign Language.

32.  At the time the police officers observed Plaintiff in his home he was in no apparent distress, was not injured and did not display aggressive behavior.

33.  The police officers then left Plaintiff in his home.

34.  Plaintiff thereafter observed the same officers through his window in a marked car outside of his residence.

35.  Plaintiff proceeded towards the officers to attempt to determine why they remained at his residence.

36.  Plaintiff attempted to communicate by hand gestures and written notes to ask why the officers were there.

37.  The police officers wrote back, in sum and substance to the best of Plaintiff's understanding, that they "called an ambulance" for Plaintiff.

38.  Recognizing that he did not understand the situation, Plaintiff then gestured with his hands that he was going to get someone to help him communicate and moved back towards his residence.

39.  As Plaintiff moved towards his residence, the police officers forcibly grabbed Plaintiff.

40.  The police officers then forced Plaintiff to the ground, against a fence and handcuffed him.

41.  Defendants did not effectively communicate to Plaintiff prior to then that he was under arrest.

42. Plaintiff was restrained against his will for over approximately one hour until an ambulance arrived.

43. Throughout his forcible detention and restraint, Plaintiff was deprived of an American Sign Language Interpreter or an auxiliary communication device and was unaware why he was so restrained.

44. Multiple witnesses observed the interaction between Plaintiff and the police officers and such interaction is memorialized in a recording.

45. In such recording, witnesses call out to the police officers that Plaintiff is deaf and cannot speak to which the police officers replied "we know".

46. The police officers proceeded to verbally speak to Plaintiff telling him to "calm down" as he struggled and his hands were pulled behind his back and he was put into handcuffs.

47. The police officers through the entirety of the interaction with Plaintiff did not effectively communicate with him, in language that he could understand, and did not attempt to summon an interpreter or utilize an auxiliary communication device though they had an opportunity to do so.

48. After Plaintiff was restrained in handcuffs, the police officers also failed to call for an interpreter or utilize an auxiliary communication device for approximately one hour while Plaintiff was forced to wait for an ambulance.

49. Plaintiff sustained bruises from the handcuffs.

50. Plaintiff was then forced to walk to the ambulance that had arrived and was taken to the Emergency Room at Bronx-Lebanon Hospital.

51. In the ambulance, Plaintiff was deprived of an American Sign Language interpreter or other auxiliary communication device.

52. In the ambulance, Plaintiff was prohibited from communicating by American Sign Language as his hands were restrained in handcuffs and there were no American Sign Language interpreters present, either on-site or through an auxiliary communication device.

53. Plaintiff was held at Bronx-Lebanon Hospital against his will from July 7, 2015 through July 8, 2015.

54. Plaintiff was not permitted to leave the hospital until his discharge on July 8, 2015.

55. Plaintiff had reason to believe that he was unable to leave the hospital until his discharge on July 8, 2015.

56. During Plaintiff's confinement he was transferred from the Emergency Department to the Psychiatric Ward in another, second ambulance.

57. During Plaintiff Mr. Feliz's confinement at Bronx-Lebanon Hospital, no American Sign Language Interpreter or auxiliary communication device was provided to him including on admission, examination, and discharge.

58. Bronx-Lebanon's medical records indicate such entity's awareness of Plaintiff Mr. Feliz's deafness and tunnel vision, indicate that he needs a sign language interpreter and has limited English proficiency.

59. While in the ambulance, and at the hospital, Plaintiff Mr. Feliz's mother, whose primary language is Spanish, requested a sign language interpreter for Plaintiff in the Emergency Department and the Psychiatric Department by speaking to personnel in both departments.

60. Plaintiff Mr. Feliz also attempted to request an American Sign Language interpreter on his own behalf by attempting to use American Sign Language when communicating with agents and employees of Bronx-Lebanon, but his signs were ignored and disregarded.

61. The agents and servants of Bronx-Lebanon ignored the Plaintiff Mr. Feliz's requests for an interpreter as they proceeded to conduct communication with Plaintiff Mr. Feliz by using his mother as a conduit of communication.

62. Bronx-Lebanon's psychiatric evaluation of Plaintiff was conducted through Plaintiff's mother who herself is not fluent in American Sign Language and who had difficulty communicating effectively with Plaintiff.

63. Only after his confinement at Bronx-Lebanon when he was able to communicate with his mother through a video relay interpreter (VRI) (via telephone), was Plaintiff able to understand what occurred in the hospital.

64. During Plaintiff's evaluation at Bronx-Lebanon, he had no knowledge or understanding of what was being asked by the physicians.

65. Plaintiff did not affirmatively provide any of the answers or responses recorded in the Bronx-Lebanon Hospital records during his examination because there was no effective means of communication provided to Plaintiff.

66. The Plaintiff has a history of mental health issues, including depression and schizophrenia.

67. Upon information and belief, the Plaintiff began treating for mental health issues in or about calendar year 2005 and continued to treat for mental health issues until in or about calendar year 2009 or 2010, taking medication that included Risperdal.

68. Upon information and belief, the Plaintiff began taking medication, Risperdal, for mental health issues beginning in or about 2005 and continued to take medication for mental health issues until in or about calendar years 2009 or 2010.

69. The police officers that took Plaintiff into custody, to Bronx-Lebanon Hospital, on July 7th 2015, stated that they approached Plaintiff because it was their understanding that the Plaintiff posed a physical threat to himself.

70. The police officers were unable to assess whether the Plaintiff posed a physical threat to himself because they were unable to effectively communicate with the Plaintiff at his home when they handcuffed him and took him into custody or with Plaintiff Ms. Feliz when they attempted to communicate with her.

71. The staff in the ambulance that drove the Plaintiff to Bronx-Lebanon were unable to assess whether the Plaintiff posed a physical threat to himself because they were unable to effectively communicate with the Plaintiff at his home when they arrived and took him into custody.

72. The staff at the emergency room at Bronx-Lebanon Hospital was unable to assess whether the Plaintiff posed a physical threat to himself because they were unable to effectively communicate with the Plaintiff.

73. The staff in the second ambulance that drove the Plaintiff from the emergency room to the Psychiatric Department of Bronx-Lebanon was unable to assess whether the Plaintiff posed a physical threat to himself because they were unable to effectively communicate with the Plaintiff..

74. The staff at the Psychiatric Department at Bronx-Lebanon Hospital was unable to assess whether the Plaintiff posed a physical threat to himself because they were unable to effectively communicate with the Plaintiff.

75. The events detailed above caused Plaintiffs severe pain and suffering, emotional distress and anguish, humiliation, and a reasonable fear that these events would reoccur in the future, including being taken into custody again and confined.

76. The Plaintiff MR. FELIZ began to treat again for mental health issues following the events of July 7th and July 8, 2015 and began to take medication—Sertraline— for mental health issues again following the events of July 7th and July 8th, 2015.

77. The Plaintiff treats presently for issues involving, among other diagnoses, depression, through the services of both a mental health therapist and psychiatrist.

78. That prior to the incident of July 7, 2015, and during the year 2007, the Plaintiff did in fact have another interaction with the New York City Police Department due to a mental health crisis. The events that led up to the interaction are as follows: The Plaintiff's wife's niece reported to her school principal that the Plaintiff and his wife were in an argument. The Plaintiff and his wife were called into the school. The New York City Police Department arrived at the school as, upon information and belief, the principal had made a call to The New York City Police Department as the principal was concerned that Plaintiff MR. FELIZ was a danger to himself or others. The New York City Police Department took the Plaintiff to Bellevue Hospital, where he remained overnight, due to mental health issues. Upon information and belief, in light of the Plaintiff's mental health diagnoses, and past history, there is a reasonable expectation that the Plaintiff, Plaintiff's family, Plaintiff's friends and/or Plaintiff's neighbors will communicate in the future with the New York City Police Department and request the presence of police officers to assist the Plaintiff safeguarding himself and/or others, based upon, among other things, the Plaintiff's mental health history and the police officer's earlier admission on July 7th, 2015, while bringing the Plaintiff into custody, that it was the police officer's understanding that the Plaintiff posed a physical threat to himself.

79. That according to the New York City's Department of Health website, the City of New York provides mental health crisis services through its Crisis Emergency Services Mobile Crisis

13

Teams in the Bronx, Brooklyn, Manhattan and Queens. These teams consist of certain health professionals who provide mental health services, primarily in a person's home. Notably, in those instances where the crisis team determines that a person has "a mental illness (or the appearance of a mental illness) and are a danger to themselves or others", the Mobile Crisis Teams "may direct police to take a person to an emergency room against their will." https://www1.nyc.gov/site/doh/health/health-topics/crisis-emergency-services-mobile-crisis

80. Considering that the New York City Department of Health Mobile Crisis Teams do summon the police to assist to take a mentally ill persons away against their will, Plaintiffs have a substantial likelihood of recurring injury because they are virtually certain to have future encounters with the New York Police Department when a mental health crisis arises and will be denied the ability to effectively communicate with the officers during any future interaction unless an injunction issues mandating that the City of New York provide effective communication through on-site interpreters and other auxiliary aids that advance effective communication in activities involving non-criminal behavior by deaf persons in New York City where the police are present and interact with deaf persons.

81. Upon information and belief, because of the Plaintiff's chronic mental health condition and substantial likelihood of recurring mental health crisis, and as a result of the Plaintiffs' expectations to continue to reside at the same residence in the future, availing themselves of the range of community services offered by their neighborhood precinct, including, for example, investigating domestic incidents between Ms. Feliz and Mr. Feliz, even where New York City police officers decide not to call an ambulance to transport Mr. Feliz for mental health care to a hospital or other mental health institution, but instead seek in the first instance to mediate a future domestic dispute between Ms. Feliz and Mr. Feliz, and because there is a reasonable expectation that the New York

14

City Police Department will be summoned again to assist the deaf Plaintiff and his deaf wife, resulting in the mediation of a domestic dispute or calling for an ambulance to transport Mr. Feliz to a hospital or other mental health institution, accordingly, an injunction should issue requiring the New York City Police Department to use on-site American Sign Language interpreters and other auxiliary aids and services that will provide for effective communication between the Plaintiffs and the New York City Police Department in the future, as well as others similarly situated.

82. Plaintiffs are in all probability virtually likely to engage in law-abiding activities that prompted the police interaction in the Plaintiffs' case. In addition to mental health crisis services involving police interaction, other non-criminal services, which may prompt police interaction, as described in the current NYPD Language Access Plan, include:

    a.  Investigating reports of crimes

    b.  Investigating motor vehicle accidents

    c.  Responding to sick or injured persons

    d.  Responding to other emergencies reported to "911" as necessary

    e.  Investigating missing persons

    f.  Enforcing violations of the law, both criminal and traffic, through summonses and arrests

    g.  Investigating domestic incidents

    h.  Mediating disputes

    i.  Recovering found property

    j.  Documenting lost property

    k.  Fingerprinting civilians

l.  Providing firearm licenses

m.  Providing certificates of good conduct

n.  Providing safety and security services for public schools, public housing developments, and mass transit facilities

o.  Providing counterterrorism protection for the City.

83. There are questions of law or fact including without limitation:

a.  Whether Defendants' common policies have an adverse impact upon Plaintiffs, and, if so, whether this impact is justified by business necessity;

b.  Whether Defendants' policy or practice of failing to make American Sign Language interpretive services available to the deaf population when involved in a police interaction negatively affects Plaintiffs;

c.  Whether Defendants' policy and practice of failing to make American Sign Language interpretive services to the deaf population when involved in a police interaction, but making interpretive services available to other languages, unfairly discriminates against Plaintiffs, in violation of federal, state and city statutes;

d.  Whether equitable relief is warranted and what the nature of such relief ought to be.

## COUNT 1
## DISCRIMINATION UNDER THE
## AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT

84. Plaintiffs repeat and re-allege paragraph 1-88 fully as if said paragraphs were fully set forth herein at length.

85. Defendants CITY OF NEW YORK and their agents, servants, officers, and/or employees acted under color of statute, ordinance, regulation, custom or usage of a State.

16

86. Defendants CITY OF NEW YORK, their agents, servants, officers, and/or employees and BRONX-LEBANON HOSPITAL violated Title II of the Americans with Disabilities Act ("ADA") of 1990 (Pub. L. 101-336) (ADA), as amended, as such title appears in volume 42 of the United States Code, beginning at section 12101.

87. Title II of the ADA "applies to all services, programs, and activities provided by or made available by public entities." *See* 28 C.F.R. §35.130(b)(7).

88. Section 12132 of the ADA specifically states:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

89. Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a) specifically states:

> No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

90. The anti-discrimination provisions of Title II of the ADA and Section 504 of the Rehabilitation Act are enforceable through implied private rights of action. *Barnes v. Gorman*, 536 U.S. 181 (2002).

91. Plaintiffs are each a "qualified individual" inasmuch as they are individuals who have a disability, deafness, and "who with or without reasonable modifications to rules, policies or practices, the removal of…communication…barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42. U.S.C. Section 12131(2).

92. Defendants CITY OF NEW YORK and NYPD are covered entities inasmuch as each is a public entity.

93. Law enforcement officers who are acting in an investigative, custodial services capacity, community services capacity or health services capacity, whether directly or in an auxiliary capacity, are performing services, programs, or activities within the scope of Title II of the ADA and such interactions are not exempt from Title II coverage.

94. Defendant BRONX-LEBANON HOSPITAL is a covered entity inasmuch as it operates a program that receives federal funds and has fifteen or more employees.

95. Defendants who interacted with Plaintiffs from CITY OF NEW YORK and who interacted with Plaintiff MR. Feliz at BRONX-LEBANON HOSPITAL regarded them as being disabled and were aware of their deafness as evidenced by, among other things, records of Bronx-Lebanon and video recordings of CITY OF NEW YORK.

96. Plaintiffs were entitled to the same non-criminal as well as criminal services that Defendant CITY OF NEW YORK provides to other non-disabled persons.

97. Plaintiffs were entitled to the benefit of lawful exercises of police powers, including but not limited to the right not to be unlawfully discriminated against and detained.

98. Plaintiff MR. FELIZ was entitled to the same health care services that Defendant BRONX-LEBANON HOSPITAL provides to other non-disabled persons.

99. The health care services Defendant BRONX-LEBANON HOSPITAL provides to other non-disabled or "hearing" persons is to communicate with such persons in diagnosing and treating any presenting illness and permitting them to participate in their care.

100.    Plaintiff MR. FELIZ was entitled to the benefit of being able to communicate with physicians, nurses, and other medical personnel as they attempted to provide medical treatment and to understand the treatment he was being provided.

101.     Defendants discriminated against Plaintiffs solely because of their disability and failed to provide reasonable accommodations.

102.     CITY OF NEW YORK's actions were taken under circumstances giving rise to an inference of discrimination. Defendants intentionally discriminated against Plaintiffs and/or were deliberately indifferent towards Plaintiffs' rights in that Plaintiff MR. FELIZ was engaged in lawful activity in his home, as was Plaintiff SULEIKA FELIZ who was in her friend's home, and both Plaintiffs were known to be deaf by such Defendant, were verbally spoken to by such Defendant, without the presence of interpreters, notwithstanding an awareness of their deafness, Plaintiff MR. FELIX was forcibly restrained from communicating notwithstanding that Plaintiff MR. FELIZ posed no apparent danger, and was publicly humiliated by police officers forcibly restraining him against a fence as he signed for helped and such officers then falsely informed the witnesses who congregated that Plaintiff was suicidal.

103.     No interpreter or auxiliary communication device was provided to Plaintiffs by Defendant CITY OF NEW YORK despite these defendants' obligations under federal, state, and local law, as well as under their Settlement Agreement between The United States of America and The New York City Police Department to resolve claims of deaf discrimination by the New York City Police Department. Such settlement agreement is attached hereto as Exhibit 2.

104.     BRONX-LEBANON's actions were taken under circumstances giving rise to an inference of discrimination. Defendant intentionally discriminated against Plaintiff and/or was deliberately indifferent towards Plaintiff's rights in that such Defendant was patently aware that Plaintiff was deaf, Defendant had the ability and means to contact an

19

interpreter or utilize a VRI yet instead used Plaintiff's Spanish speaking mother, who herself has limited ability to communicate with the Plaintiff without utilizing interpreters or auxiliary communication devices and is not able to otherwise adequately interpret to and for the Plaintiff, to evaluate his mental state, ignored Plaintiff's sign language request for an interpreter and repeatedly ignored his mother's verbal requests for an interpreter, and ultimately discharged Plaintiff without having ever provided an adequate assessment of Plaintiff's mental health.

105.    No interpreter or auxiliary communication device was provided to Plaintiff by Defendant BRONX-LEBANON HOSPITAL despite this defendant's obligation under federal, state, and local law, to provide medical care within the accepted standards of care and treatment.

106.    The CITY OF NEW YORK is vicariously liable for the violations of the ADA and Rehabilitation Act by its employees. Patton v. Dumpson, 498 F. Supp. 933, 942 (S.D.N.Y. 1980).

107.    The CITY OF NEW YORK is further liable for the violations of the ADA and Rehabilitation Act by its employees pursuant to Monell as the CITY OF NEW YORK has official policies or customs that caused Plaintiffs to be subjected to a violation of their rights, including under the ADA and Rehabilitation Act as follows:

(a) The CITY OF NEW YORK has expressly adopted a policy or custom that the ADA is inapplicable to on-the-street interactions with the deaf or hearing impaired until an arrest has been made. Evidence of such policy is found in a "Settlement Agreement between The United States of America and the New York City Police Department" Exhibit 2 at pages 4, 14-15. Such policy directly caused Plaintiffs'

injuries herein as the accommodations the ADA requires of qualified interpreters or auxiliary communicated devices were denied to Plaintiffs during the above events and deprived them of their rights under the ADA, to wit: the policy of the ADA being made inapplicable by the CITY OF NEW YORK to on-the-street interactions with the deaf which caused the police officers who responded to Plaintiff Feliz's friend's home, and to Plaintiff Mr. Feliz's home to forcibly restrain, arrest, detain, and transport him without requesting or utilizing the services of a qualified interpreter or auxiliary communication device to communicate with Plaintiffs to determine whether or not there existed probable cause to arrest Plaintiff MR. FELIZ or probable cause to take him to the hospital. This resulted in Plaintiff being held against his will from July 7, 2015 through July 8, 2015 although he was not a danger to himself or others.

(b) The CITY OF NEW YORK is further liable under <u>Monell</u> for failing to train its police officers, to wit: The CITY OF NEW YORK failed to train its police officers on how to interact with the deaf and hearing impaired in a manner that respected their rights under the ADA and the Rehabilitation Act. The failure to train occurred in a manner evincing a deliberate indifference to the rights of the deaf and hearing impaired. Specifically after the settlement agreement between the New York City Police Department and the United States of America in 2009, (<u>Exhibit 2</u>), this defendant was on notice that its procedures and officer training were not satisfying its legal obligations under the ADA to the deaf and hearing impaired, and as such, they were on notice that deaf persons were having their civil rights violated. Notwithstanding such notice and the 2009 agreement, upon information and belief

the City has not made changes to the training program of police officers following the agreement. This lack of training despite notice of deficiencies in interacting with the deaf and hearing impaired led the officers who interacted with Plaintiffs to treat them in the manner described above. The lack of training in how to interact with the deaf community resulted in the police officers who responded to Plaintiff Ms. Feliz's friend's home and Plaintiff Mr. Feliz's home, failing to request an interpreter and/or failing to use an auxiliary communication device, such police officers verbally speaking to Plaintiffs, despite the fact that they could not hear the police officers and caused such officers to arrest and transport Plaintiff Mr. Feliz to a hospital without determining whether probable cause existed that Plaintiff had committed a crime or that probable cause existed that Plaintiff was a danger to himself or others.

(c) Defendant CITY OF NEW YORK utilizes a "Language Access Plan" for persons with limited English proficiency that was in effect during the above-described events. The Language Access Plan is attached hereto as Exhibit 1. The Language Access Plan identifies six languages as those for the baseline languages in such policy and none of those includes American Sign Language. Exhibit 1 at 3. The policy of the CITY OF NEW YORK in its Language Access Plan accommodates foreign languages yet does not include American Sign Language and excludes the deaf and hard of hearing, including Plaintiffs. The Language Access Plan that accommodates foreign language pursuant to Title VI, yet not including the deaf under the ADA, further demonstrates a deliberate indifference to protecting the rights of the deaf and hard of hearing. The failure to include American Sign

22

Language in such plan resulted in Plaintiffs being denied language access during the events of July 7, 2015 to July 8, 2015 and denied him the ability to communicate with police officers.

108.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiffs suffered adverse consequences. Plaintiffs suffered physical injury, severe extreme humiliation, emotional pain, and trauma, to their detriment.

**COUNT II**
**DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW**

109.     Plaintiffs repeat and re-allege Paragraphs above as if said paragraphs were fully set forth herein at length.

110.     All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiffs on the basis of his disability in violation of New York State Executive Law §296 et seq.

111.     All Defendants' acts, practices, and policies described herein constitute discrimination against Plaintiffs on the basis of their record of disability, in violation of New York State Executive Law §296 et seq.

112.     All Defendants' acts, practices and policies described herein constitute discrimination against Plaintiffs on the basis of their perceived record of disability, in violation of New York State Executive Law §296 et seq.

**COUNT III**
**DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE**
**CODE**

113.     Plaintiffs repeat and re-allege Paragraphs above as if said paragraphs were fully set forth herein at length.

114.    All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their disability, in violation of the New York City Administrative Code §8-107 et seq.

115.    All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their record of disability, in violation of the New York City Administrative Code §8-107 et seq.

116.    All Defendants' acts, practices, and policies herein constitute discrimination against Plaintiffs on the basis of their perceived record of disability, in violation of the New York City Administrative Code §8-107 et seq.

## COUNT IV
### PURSUANT TO § 1983 FOR VIOLATION OF HIS RIGHTS UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION

117.    Plaintiffs repeat and reallege Paragraphs above as if said paragraphs were fully set forth herein at length.

118.    The Fourth Amendment provides individuals the right to be free from unreasonable seizures, including arrest without probable cause.

119.    The police officers employed by CITY OF NEW YORK were acting under color of law when they handcuffed Plaintiff and transported him to a hospital against his will.

120.    There was no probable cause for arresting the Plaintiff and he was not engaged in unlawful activity.

121.    Plaintiff was never formally charged with a crime in connection with the events described above.

## COUNT V
### FALSE ARREST

122.    Plaintiffs repeat and reallege Paragraphs above as if said paragraphs were fully set forth herein at length.

123.    Plaintiff Mr. Feliz was not guilty of any crime that could subject him to arrest and Defendant CITY OF NEW YORK had no reasonable basis to conclude that any such crime had been committed by Plaintiff.

124.    The police officers' ineffective communication with Plaintiffs prior to their detention of Plaintiff Mr. Feliz undermined their ability to properly assess whether Plaintiff was a danger to himself or others.

125.    Nonetheless, Defendant caused Plaintiff to be restrained, arrested, and held against his will for an extended period.

126.    No charges were ever filed against Plaintiff in Court for the events of July 7, 2015 nor was any conviction ever obtained at trial.

127.    As the direct and immediate result of the foregoing conduct, Plaintiff has been caused to suffer physical injury, severe humiliation, emotional and psychological trauma, all to his detriment.

128.    CITY OF NEW YORK and NYPD are liable for the actions of its police officers under theories of agency and *respondeat superior*.

### COUNT VI
### ASSAULT AND BATTERY

129.    Plaintiffs repeat and re-allege Paragraphs above as if said paragraphs were fully set forth herein at length.

130.    As described above, Defendant CITY OF NEW YORK through their officers and/or employees, physically invaded Plaintiff MR. FELIZ's personal space and menaced and threatened Plaintiff with gestures and movement, the intent of which was to arouse apprehension

of harmful or offensive bodily contact, resulting in the terrorizing of Plaintiff. Plaintiff was placed in immediate danger of life and limb as a result of this conduct and suffered severe emotional trauma, anguish, and humiliation as a result.

131.     Accordingly, Defendants CITY OF NEW YORK intentionally placed Plaintiff in apprehension of an imminent, offensive, and/or harmful touching.

132.     Defendants' threats were independent of any physical contact.

133.     As further described above, Defendant CITY OF NEW YORK subjected Plaintiff to forceful, unwanted physical touching.

134.     As a direct and immediate result of this touching, Plaintiff was caused to suffer bodily harm and emotional distress and anguish, all to his detriment.

135.     Defendants' acts were committed with a conscious and deliberate disregard of the interest of others such that their conduct may be called willful or wanton.

136.     The CITY OF NEW YORK and NYPD are liable for the actions of its police officers under theories of agency and *respondeat superior*.

## COUNT VII
## INJUNCTION

137.     Plaintiffs repeat and reallege Paragraphs above as if said paragraphs were fully set forth herein at length.

138.     Money damages are insufficient to fully address the claims set forth herein, and irreparable injury will result unless Plaintiffs are granted a permanent injunction requiring New York City Police Department's officers for on-the-street interactions with the deaf or hard of hearing to provide effective communication through the use of interpreter services whether through live interpreters or auxiliary communication devices.

139.     The police officers who injured Plaintiffs as described above are officers who are assigned to the precinct that serves Plaintiffs' permanent residence and as such Plaintiffs are likely to have contact in the future with this police precinct, including because of the mental health history of the Plaintiff Mr. Feliz, and, including for example, domestic disputes between Mr. Feliz and Ms. Feliz, described in this pleading.

140.     The police department provides a wide variety of public services that members of the public, including Plaintiffs, have a right to benefit from. Exhibit 1 at 1.

141.     Plaintiffs and/or Plaintiffs' family and/or Plaintiffs' friends and/or Plaintiffs' neighbors are likely to utilize one or more of such services that include law enforcement, emergency services, answering questions, and peaceful community assistance services in the future, including because of the mental health history of the Plaintiff Mr. Feliz and the domestic disputes between Mr. Feliz and Ms. Feliz.

142.     Plaintiff Mr. Feliz is likely to be engaged in the same behavior that resulted in the actions of the Defendant described above: lawfully being present in his permanent residence and not being engaged in illegal behavior, and interaction with police officers from the City of New York.

143.     Upon information and belief, in light of Plaintiff Mr. Feliz's mental health diagnoses, and past history, and including for example domestic disputes between Ms. Feliz and Mr. Feliz, there is a reasonable expectation that the Plaintiffs, Plaintiffs' family, Plaintiffs' friends and/or Plaintiffs' neighbors will communicate with the New York City Police Department and request the presence of police officers to assist the Plaintiff Mr. Feliz in safeguarding himself and/or others, based upon, among other things, the Plaintiff's history and the police officer's earlier

admission on July 7th, 2015, while bringing the Plaintiff into custody, that it was the police officer's understanding that the Plaintiff posed a physical threat to himself.

144.     Upon information and belief, because of the Plaintiff's mental health history and current treatment and medication, in addition to a history of domestic disputes between Ms. Feliz and Mr. Feliz, and as a result of the Plaintiffs' expectation to continue to reside at the same residence in the future, availing themselves of the range of community services offered by his neighborhood precinct, and because there is a reasonable expectation that the New York City Police Department, through its agents, servants and employees, will be summoned again to assist the Plaintiffs, including Plaintiff Mr. Feliz who treats for mental health issues, an injunction should issue requiring the New York City Police Department to use on-site American Sign Language interpreters and other auxiliary aids and services that will provide for effective communication between the Plaintiffs and the New York City Police Department in the future.

145.     Plaintiffs are and will in the foreseeable future remain persons of limited English proficiency who communicate effectively solely through American Sign Language.

146.     Money damages are insufficient to fully address the claims set forth herein, and irreparable injury will result unless Plaintiffs are granted a permanent injunction requiring The City of New York and The New York City Police Department and Bronx Lebanon Hospital Center to provide American Sign Language interpreters auxiliary communication aids to deaf or hearing-impaired person who are hospitalized.

147.     Plaintiff Mr. Feliz was transported from his permanent residence to the Emergency Room at Bronx Lebanon Hospital; Plaintiffs' permanent residence and local hospital will remain the same for the foreseeable future; BRONX LEBANON remains the closest hospital where an ambulance can transport the Plaintiff Mr. Feliz, as well as Ms. Feliz, from the home that they share.

148.     Plaintiffs are and will in the foreseeable future remain persons of limited English proficiency who communicate effectively solely through American Sign Language.

149.     Defendant BRONX LEBANON's personnel, in the ambulances, in the Emergency Department and in the Psychiatric Unit repeatedly disregarded Plaintiff's needs and requests for interpreting services, notwithstanding their awareness of his need for an interpreter while he was compulsorily hospitalized at their facility.

150.     It is reasonable to expect that the Plaintiff Mr. Feliz will utilize the hospital again when he is ill, including whether he is forcibly taken there as described above, and the practices of BRONX LEBANON in failing to accommodate his disability and failing to provide effective communication by failing to provide an interpreter or auxiliary communication device will remain, unless an injunction requiring the use of American Sign Language interpreters to achieve effective communication issues.

WHEREFORE, Plaintiffs demand judgment as follows:

i.     On the First Cause of Action through Sixth Cause of Action,  a judgment against Defendants and an award of compensatory damages for emotional distress, punitive and/or exemplary damages, attorneys' fees and costs, pre and post-judgment interest, in an amount to be determined at trial in excess of the jurisdictional limits of the Court, and further relief as this Honorable Court deems just, equitable and proper;

ii.     On the Seventh Cause of Action a judgment against Defendants and a permanent injunction requiring the New York City Police Department and Bronx-Lebanon Hospital to have proper training, policies, and procedures in place and to provide reasonable accommodations such as American Sign Language Interpreters and/or auxiliary communication devices to all deaf and hard of hearing persons in non-

criminal interactions with law enforcement as to the City of New York and hospitalization as to Bronx-Lebanon Hospital Center, as well as for attorney's fees, and further relief as this Honorable Court deems just, equitable and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated:     May 25, 2017
           New York, New York

                                    Respectfully submitted,

                                    THE JACOB D. FUCHSBERG LAW FIRM

                            By:     _____

                                    Alan Fuchsberg, Esq.
                                    a.fuchsberg@fuchsberg.com
                                    Attorneys for Plaintiffs
                                    Office and Post Office Address
                                    500 Fifth Avenue, 45th Floor
                                    New York, New York 10010
                                    (212) 869-3500

                                    NEW YORK CENTER FOR LAW AND
                                    JUSTICE

                            By:     _____ /S/ Bruce J. Gitlin

                                    Bruce J. Gitlin, Esq.
                                    bgitlin@brucegitlin.com
                                    Attorneys for Plaintiffs
                                    Office and Post Office Address
                                    2095 Broadway, Suite 411
                                    New York, New York 10023
                                    (212) 757-2800

30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Case No.: 1:16-cv-05261

WELLINGTON FELIZ,

                                                              Plaintiff,

                              - against -

THE CITY OF NEW YORK, and BRONX-LEBANON HOSPITAL CENTER,

                                                              Defendants

# SECOND AMENDED COMPLAINT

### THE JACOB D. FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiff
Office and Post Office Address, Telephone
500 Fifth Avenue, 45th Floor
New York, NY 10110
(212) 869-3500

| To | Service of a copy of the within is hereby admitted. |
|---|---|
| | Dated: _____ 201__ |
| **Attorneys for** | |

PLEASE TAKE NOTICE:

____  NOTICE OF ENTRY that the within is a (certified) true copy of a _____ duly entered in the _____ office of the clerk of the within named court on _____ 201__

____  NOTICE OF SETTLEMENT that an order of which the within is a true copy will be presented for settlement to the HON. _____ one of the judges of the within named Court, at _____ on _____ 201__ at _____ ___M

Dated:

                                        Yours, etc.

                        THE JACOB D. FUCHSBERG LAW FIRM, LLP